Good morning. Case number 11-2164, Town of Cicero v. Metropolitan Water Reclamation District of Greater Chicago. And we can, you can introduce yourself when you step up to the podium. We can begin with the appellant. I know that there's an amicus, but amicus isn't yours. No? Good enough. Good morning, Your Honors. I'm George Spatero. I'm from the Del Galgo Law Group, and we represent the Town of Cicero in this action. We are the appellants. We brought this case to Your Honors for two purposes. One purpose is to look into the circumstance regarding the dismissal of two of our accounts with prejudice on a 2-615 motion. And the second purpose we came to you with this case is to look at Section 19 of the Metropolitan Water Reclamation District Act of Greater Chicago. At the outset, I believe that Cicero's counts 1 and 2, excuse me, counts 1 and 2 were dismissed under Section 2-619. Let's hold off right there, because my understanding is that there was an amended complaint filed.  Well, once an amended complaint is filed, and if you don't reassert the count that's been dismissed with prejudice, I thought the law is that you've lost it. I believe we asked for language that allowed us to come and test that, and we were denied. Right. You still can't do it unless you reassert it in your amended complaint, even though it will be subject to a dismissal by the judge, because he has already ruled to that effect. But in any event, in the amended complaint, when you amended what was then count 1, you pretty much merged the counts 1 and 2 from your original complaint into 1. I did. So it's really of no consequence, really. But let's keep our focus on the amended count, because that's really what's at stake here. At the end of the day, on that issue, what I have to say is that in the world of equity, I believe that labels have to be set aside and substance has to be taken into consideration. I believe that the trial court in that circumstance, in the 2615 circumstances here, both amended and original, were one where the easy route was taken. But you understand what the trial court can only rule on what is pending before him. I know it's Judge Hyman. And if you call it accountability and he says, I'm unacquainted with any kind of cause of action that you can label accountability, what's he to do? Look at the basis of my facts. Look at the factual allegations that are pled. Look and see exactly what I'm talking about. When I coined the phrase accountability, I know that there isn't a cause of action in this jurisdiction called accountability. But the word itself really served the purpose of what type of equity we were looking for. And the type of equity we were looking for was help where we didn't have cause of action at all or where we didn't have anything in the Act, the Metropolitan Water Reclamation District of Greater Chicago's Act, that gave us an avenue to push them to cooperate with the town, to feed us information, to help us coordinate our systems with theirs. And that leads us to the second difficulty in your complaint, which is one seeking equitable relief. Yes, sir. And it's difficult to envision what form that equitable relief would take. What could the judge, what could a circuit court judge, what order could the circuit court judge enter that would presumably be enforceable? Yes, sir. He could enter an order that would say Metropolitan Water Reclamation District develop a communication system so that municipalities and the heads of their water departments and sewer departments can call you and say, looks like we're going to get a lot of rain. What should we do? It seems to me that that's putting the court in a role that maybe the courts aren't all that used to being in. It's a common misconception that when you talk about equity that you can go into court and just make up causes of action. When you want an injunction, when you're seeking injunctive relief, which is equitable, there has to be an underlying cause of action which would cause you to be entitled to that equitable relief. It seems to me that if you're saying, well, if there's nothing in the statute, then there's no cause of action, there's no statutory cause of action, there's no common law cause of action that gives us this right, then you don't have that right. And perhaps you should be talking to the legislature about this. I don't think you can just come in and say the courts should fashion these rights for litigants when they don't exist. Let me add something to what Justice Palmer just said, and it concerns, maybe it's that misconception that a court of equity can make right everything that's wrong with the world, or do what should be done in fairness. And there's no dispute that creating such a line of communication in anticipation of a heavy rainfall that's going to have consequences in your town, certainly seems like the right thing to do. Especially since they have the wherewithal to do it, and a telephone call would keep us all on the same page. Now let's go to Justice Palmer's point, though. Justice Palmer's point is that you need an underlying cause of action to force the court, or to allow the court, to take the steps that you're asking it to take. Well, Judge, I think that I should have been given an ability to replete it. If the wording, if the title, if the moniker that I place upon my request isn't something that's palatable, I should be given an opportunity. I wasn't given an opportunity to replete count one. Count two. If you think that you should have been given an opportunity to replete, you're saying to the court, well, I could have come up with a cause of action. So my question to you is, well, what's your cause of action? I would have not called it accountability. I would have just stayed specifically with more beefed up facts, I think. And then what I would have done is I would have tailored the relief that I was requesting to the types of relief that are customarily given by throwing my moniker to the wayside. That doesn't answer my question. I mean, I agree with you that that would be a good idea to take the accountability away so that we don't have an issue with that. But in injunctive relief situations, what we always have to consider is that one of the requirements for injunctive relief is that you have to show that there's a likelihood of success in the merits. When they say merits, they're talking about the merits of a cause of action. You have to have a cause of action. You just can't go to the courts and say, this would really be a good thing if they communicated with us. I agree with Justice Garcia. It seems to me like it would be a really good thing, especially when the rain is coming down like it was coming down. But the courts only have so much power. And if it would be a really good thing, maybe it would be a really good thing to tell Springfield about. Because I still need to know, if you want relief to replete, what are you going to replete? I mean, what cause of action are you going to claim? And let me add something, because I thought your cause of action was grounded in Section, what is it, 19? Yeah. Even though 19 doesn't talk about anticipatory damages, it talks about damages already caused through the use or whatever the language is. But I thought that's where you were going. I think the trial court thought that was where I was going, too, because ultimately, when I amended, the trial court said, well, because we're dismissing Count 3 with prejudice, Count 2 has got to fail because it relies upon Section 19. It really didn't. So why don't we start with Count 3? Why do you think you have a cause of action under Section 19? I think I have a cause of action under Section 19 because the Metropolitan Water Reclamation District's facilities, since Section 19 was built in our community, they have built down shafts. They have built runoff devices. And they have control rooms in our community. And they have the wherewithal to deal with this. Section 19 on its face, the language of Section 19 on its face includes terms like enlargement of its systems. And since Section 19 was written, that's what has happened. The district has enlarged its system from being active in southern Illinois to being active in northern Illinois. They have built all of the devices that connect with my town's sewage system, my town's drainage system. They are in our towns. They are not just in southern Illinois anymore. And I really believe that the legislature, when it wrote this language and when it reviewed it time and time and time again from then until now, chose to stick with this language because they knew this language was clear and would stand the test of time. And that, I think, is the key to Section 19. It intentionally says enlargement of its systems. Let me interrupt you right there and ask you whether you believe the damage, the $42 million damages sustained by the town of Sistro and its residents has anything to do with the enlargement of the reclamation district. It does. Or does it really have to do with the maybe once in a decade, twice in a decade, three times in a decade, if we're talking 2009, January, whatever, the two separate rainfalls in 2010, whether it was really a product of that excessive rainfall. It's both. And it's both because it's given the duty under Section 19 to do that. But what did they do wrong that would have led to the sewage backup in residences? What went wrong is that even though they had all of the ability, they chose not to use it in our communities. It sounds like you're suggesting that the cause of action is one of omission as opposed to commission, where they failed to take the steps to avoid the damages that eventually would have been caused. Mostly. I agree with that. Mostly. Mostly it is they failed to avoid. But what they failed to do with the systems that they do have is to put together a communication system with all of the plant and equipment. And that's where we, and Section 19, Your Honors, has such clear language in it. I mean, it uses words like, like I said a moment ago, it uses words like enlargement of its system. It enlarges its system into our county. Mr. Spataro, I'm going to have to ask you to wrap up, and you'll have time for a rebuttal. I will. Thank you. Sir, all in all, I believe that under the 2615 arguments, we should be given leave to amend. They should be sent back for further amendment to at least give us an opportunity, because it does appear that we could state a cause of action. And next, Section 19, the trial court should have followed Pineschke. Pineschke says that Section 19 is clear, and he says that's from above. The trial court has to follow that. And I believe that Pineschke really is the guidance of whether or not Section 19 is clear or ambiguous. And I think it's clear. I think Pineschke should have been followed. And I think Section 19 should apply to everywhere that the Metropolitan Water Reclamation District has expanded its plants and equipment into communities. Thank you. Good morning, Your Honor. May it please the Court, my name is Jim Zabel, Z-A-B-E-L. I am one of the attorneys for the Metropolitan Water Reclamation District. I also want to take this opportunity to acknowledge the presence of my colleague, Ms. Ellen Avery, who has worked extensively on this matter. Well, Your Honors, I find myself in the both enviable and unenviable position of having had the Court, by dint of its observations at the onset of argument, cutting 19 of my 20 minutes out of the argument. That's arguably a blessing and a curse. Let me make this point first. You only get 15, and you don't have to use them all. And I won't, Your Honor. I didn't, in all candor, I had very little to say to the Court. Well, let's, I do have a question. Why, you know, what does, if the case is properly pronounced, Penesci. Penesci, Your Honor. What does Penesci stand for if it doesn't stand for what the appellants are claiming it stands for, and which gives them at least, or gives us, guidance in addressing their complaint? Thank you, Your Honor. It is Penesci. If you were to ask me, Jim, why are we here? I would say Mr. Szabo, but. Thank you, Your Honor. We're here because of Penesci. I would not be so presumptuous as to suggest to you that there is a conflict within the appellate court on this issue, because there is not. As I stand here, the Penesci Court in 2004 is the only recent, relatively speaking, recent Section 19 opinion. All of the dozens and dozens of other Section 19 opinions, with one anomaly, or one exception, if you will, from 1941. These are cases that the District doesn't necessarily agree with the outcome insofar as the flooding damages are concerned, but these are, in all candor, cases that the District does not agree with the outcome insofar as the flooding damages are concerned. With all due respect to the Second District, I believe very strongly that the Penesci Court got it wrong. It got it wrong twice. It got it wrong right out of the chute for the simple reason that Section 19 never applied to the Rock River Water Reclamation District, or what we knew as the old Rockford Sanitary District. Section 19 never even applied. As I stand here, the MWRD is the only sanitary district or water reclamation district that is incorporated under the aegis of its 1889 Act. An act to create sanitary districts and remove obstructions in the Des Plaines and Illinois Rivers. Notwithstanding the fact that at several places in our enabling legislation it makes reference to sanitary districts in the plural. Again, the reality is we are the only sanitary district incorporated under the 1889 Act. The Rockford Sanitary District was incorporated, I believe in 1926, under the aegis of the 1917 Sanitary District Act. That is actually the most common of the sanitary district incorporations, if you will. Many of our sister treatment works are incorporated under the 1917 Act. So the point is this. Our statute contains a judicial notice provision. The other statute contains a judicial notice provision. It's generally understood that courts will take judicial notice of the sanitary districts that are created within their jurisdiction. Again, with all due respect, the Pineshie Court got it wrong right out of the chute because Section 19 never even had any application. It was a default case to begin with. Plaintiff's counsel drafted a kitchen sink complaint, if you will, that included a number of counts and one of them was Section 19. It was a default case. There was, as the court knows, unsuccessful motion practice to vacate that default. One thing led to the other, and for all intents and purposes, one could read Pineshie and say, they got it wrong. That's the first facet of our argument. Secondly, again, with all due respect... Let me be clear from my own understanding. You're saying they got it wrong, or are you saying they got it wrong because Section 19 doesn't even apply? Well, that's a threshold issue, Your Honor. And the segue, as it were, that I was just about to make is, well, Mr. Zabel, does it apply to this case? Does it apply to Cicero? And if not, why not? Well, the answer is no, it doesn't apply here. I mean legally as opposed to factually. Legally, no, Your Honor. Absolutely not. But factually here, it could apply, depending on whether there are facts... No, Your Honor. Alleged facts that would support it. I would tend to say no, and if you'll give me a moment, perhaps you'll understand why I'm saying no, and perhaps somewhat vehemently. As I have said literally dozens and dozens of times in the Circuit Court over the past few years, Section 19 was promulgated as part of the District's original 27-section enabling legislation. It has and had as its purpose the compensation of the downstream property owners, primarily in the Illinois Valley, who were flooded in many instances permanently. The land was permanently overflown as a consequence of the District's excavation and construction of the drainage canal, what we now know as the sanitary ship canal, at the turn of the 20th century and the reversal, the concomitant reversal of the Chicago River. There was, to a certain extent, a political issue there. The folks downstate and their legislators would not accept the District into creation, but for something that in all candor, Your Honor, I have to be forthright, when you read Section 19, that sure sounds like strict liability and tort to me. And there's a reason for that. It's because these people needed to be made whole for the damages that everyone knew would occur when Lake Michigan was turned loose on the Illinois Valley. And that's why, Your Honor, I balk a little bit when you make reference to the facts. I would say respectfully, no. I don't want to, notwithstanding Section 19, and notwithstanding the fact that Section 19 has been our nemesis ever since Panesci, I think I've fairly informed the Court of the District's position. It struck me that this was 1889, a long time ago. Other than this Panesci case, and I'm sure there's been a lot of heavy rains, there's no other case that's been cited where homeowners who are the victim of flood damage have been able to recover under Section 19. Is Your Honor asking me is there any other appellate court authority? There hasn't been any that's been cited to us. Oh, no, no, Your Honor. That's inaccurate. To me, that's striking. Well, Panesci to me is an anomaly. And as I have said, and I'll cut to the chase because your time is precious, but the very first Section 19 case that I argued when we started to be inundated with these after Panesci, I remember reading the Chicago lawyer and looking at the headnotes, and one of the headnotes was words to the effect of Rockford Sanitary District held liable under Section 19 of MWRD Act. And I got up and I ran up to our then General Counsel Mike Rosenberg, and he's reading the restaurant review just as I was Selman's review, and I said, Michael, look at this. And he read it, and we both looked at each other and said, how long is it going to take before someone sues us? And sue us they did. We have been inundated with these lawsuits since Panesci. But there's been no appellate review decisions. Your Honor's court is the first, and also you give me an opportunity to inform the court of something I suspect. I wanted to ask for your suggestion. Assuming we take your view of the Panesci case, and this decision should be published to sort of put it in its box. How do you think we should do that? Is the court offering me a position? I'm asking you. How do you suggest we do that? Do we simply label it a default case that, you know, generally when there is no opposition party, the circuit court doesn't even have to examine the pleadings to determine whether or not there's a true cause of action. If there's no one to contest it, that's the nature of our adversary system. There's no one to contest it, we accept it, and we go forward. And then the question of whether we can vacate that default depends on the diligence demonstrated by the party that didn't timely respond. I guess, Your Honor, I'm asking the court to do perhaps a great deal more than it has to. Again, I don't mean to sound presumptuous. I'm asking you to do a great deal more perhaps than you need to do to adjudicate this case. But this section 19 issue cries out for a definitive adjudication. Yes, Justice Palmer, thank you. What I wanted to say, and I was waiting for the opportunity when I thought it was appropriate, and now this is the opportunity. I wanted to report to the court, in answer to your question, one of the other so-called section 19 cases has found its way to the appellate court. It is a case entitled River City. It's the River City apartment complex on South Wells. It might be words to the effect of River City management or River City facilities management. But in any event, it's River City versus the MWRD. That lawsuit is a two-count complaint sounding in one, common law negligence, and two, section 19. That case was adjudicated recently by Judge Kirby and counsel for plaintiffs just took an appeal to the appellate court. So that's the answer to your question. In the trial court, that's correct. Let me ask you this. I think one of your more interesting arguments, and a strong argument, and I'd like you to talk about it for just a minute if we have the time, is the subsequent history of the statutory scheme, the amendments over the years to section 7, and how you noted in your briefs that while, well let me take a step back. Apparently this experiment was a failure. This reversal of the river and dumping downstream turned out to be a problem, and then later on, my understanding from the briefs is that later on it was decided, well, we're going to have to do more, and that's when we started the water management. The treatment, your honor? Water treatment and the water management. You are correct. Storm water management. And your argument in your briefs, as I understand it, is that when this started happening and the statute was amended to give your organization the ability to do these additional things, the treatment and the water management, all those statutes were amended, but 19 was not. That's correct, your honor. So could you expand on that a little bit? Yes, I can. I'm not reading it verbatim, but as the court knows, the operative language in section 19 is words to the effect of channels, drains, ditches. But I did want to point out that there's no mention of downstream in section 19, is there? No, there isn't, your honor, and that's where you really will have to start, the research arm has to start. But why shouldn't we just take the statute as it's written? You can't, your honor. You know that that statute has to be considered in the light of its era, in the time that it was promulgated. That statute, that section rather, not the statute, that section of our act, much like a companion section that specifies the actual construction of the drainage canal, these are vestigial in nature. At this point they're an appendix. They don't serve any purpose, and section 19 didn't serve any purpose after the last of the overflow cases had been adjudicated. In answer to Justice Palmer's question, as respects to the other sections of the act, as I once observed to the trial court, these legislators didn't raise any, their mothers didn't raise any stupid children. There is a reason why section 19 was not amended, and the others were. And the court made reference to section 19, which provides an overview of the district's operations, where the amendment that you, Justice Palmer, alluded to, where the amendment comes into play, was, as the court correctly observed, in the early 20s there was a hue and cry downstate. Well, they built this thing, it works, but it sure smells down here. That was the advent of wastewater treatment, as we know it. That was the impetus for the construction of the Calumet plant, the district's first plant. What you notice when you look at the companion sections, including the section 7 that you referred to, Your Honor, you'll see additional language that allows for the construction of those treatment works, that allows for the construction of the intersecting sewers. Section 19 wasn't amended in any way. Well, there was a minor amendment, a procedural amendment, but I think all counsel agree that's not the dispositive issue here. Section 19, substantively, was not amended in any way. Again, at the risk of beating a dead horse, our own Supreme Court has made it clear, years ago, in City of Chicago v. Green, and gentlemen, in Green, Green was, long story short, a taxpayer suit, where the taxpayer said, I shouldn't have to pay for these City of Chicago sewer improvements. This is the bailiwick of the Sanitary District of Chicago. Let them pay for it. And the Supreme Court ultimately said, no, sir, you're mistaken. The Sanitary District isn't in the sewer business. They don't have any sewers. They're the drainage canal, the sanitary ship canal. Again, there was just no reason to amend section 19. It truly was and is vestigial, much like, for example, section 27 that specifies the actual construction of the drainage canal. It's still there. It serves no purpose. You'll need to summarize your closing here. I'm fine, Your Honor, if that's the extent of the Court's questions. Thank you. Counsel, just a couple minutes, and you understand our focus is on just what do we do with section 19? What does Pineski stand for? Pineski stands for the Appellate Court's recognition of the clear and forward-thinking language of section 19. That's what it stands for. It says. You're advocating that we read the statute as written as opposed to in the context in which it was passed. Yes. Your Honor, I think what we have to ask ourselves at the outset here is, if section 19 doesn't apply to Cicero, then why does the Metropolitan Water Reclamation District enjoy our tax dollars? Why do we give them if we don't enjoy the protections afforded by that Act? And lastly, Judge, it's clear that section 19 was left alone all of these years for a purpose. Ultimately, I believe that Your Honors should not make a conflict in decisions so that this lives on. I think that Your Honors should recognize the forward-thinking language of section 19 as well as the Second District in Pineski. And maybe Rock River wasn't the point in the Pineski case. Maybe the Act was the point in the Pineski case, and that's what the Second District was saying. Rock River, this river, that river, here's what it says. It's clear to us. And the legislature knew that this district was going to expand to the second largest budget in the state. But their position, as I understand it, is that in order for them to get into this new business, this waste management business, is the language as it stood in the rest of the statute had to be amended. And so those phrases, those operative phrases, channels and ditches didn't include what they were about to embark upon. And so they needed an authorization from the legislature to build these water treatment plants and these tunnels. And if they needed specific statutory language to do that, then their position is, well, as it stood from 1889, that phrase didn't mean what you're asking it to mean. And so when they amended everything else, but they left the same language, channels and ditches and all that stuff in Section 19, they didn't broaden Section 19 to cover the new business that they were giving the Water Reclamation District. That's their argument. Section 19 says any of its stuff. Yeah, but so did 7. So did all the rest of it. There's going to be new stuff as we go. Thinking forward that... So let me get this right. Your argument is that it covered what was amended in Section 7? It covered it in the fashion where it gave homeowners and property owners a right to recovery from them without showing negligence in whatever their endeavor was, wherever it is, as they reach from Southern Illinois and clean up. One of the things I want to say last is that what we have to recognize here is a choice of using the system. When NETCA didn't flood, Cicero, Berwyn and all of their surrounding communities did. Why? Because they used their systems that are in place to prevent that flooding there and not here. All right. Thank you very much. The case will be taken under advisement. We're going to take that five-minute break.